


UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

**04-11991GAO**

| | |
|---|---|
| PRECIOUS OKEREKE, ET AL. - Plaintiff<br><br>vs.<br><br>URBAN EDGE PROPERTY MANAGEMENT, INC.;<br><br>JUDGE STEPHEN PIERCE – MASSACHUSETTS' BOSTON HOUSING COURT AND<br><br>JUDGE KENNETH NASIF - MASSACHUSETTS' BOSTON HOUSING COURT<br>Defendants | CIVIL ACTION NO:<br>RECEIPT #_____<br>AMOUNT $ 150.00<br>SUMMONS ISSUED Yes - 3<br>LOCAL RULE 4.1_____<br>WAIVER FORM_____<br>MCF ISSUED_____<br>BY DPTY. CLK: _Kim A._<br>DATE 9/15/04<br><br>~~COMPLAINT~~<br>Notice of Removal |

MAGISTRATE JUDGE Alexander

## COUNT ONE

The Plaintiff was removing this case from the Commonwealth of Massachusetts' Boston Housing Court. The docket number was 04-SP-02260. The first Defendant instituted the proceedings against the Plaintiffs for rent arrearage. That was not in dispute; the Plaintiffs had made reasonable effort to pay off the Mediation agreed amounts, but the first Defendant refused payment of $3,057.00 and insisted that the Plaintiffs had to vacate the apartment. There had been hearings, but judicial corruption prevailed, at all material times. There had been an Eviction Order due on Thursday – September – 2004 at 9.00. [Exhibit 1] Consequent upon palpable "failure to enforce the law" or conspiratorial agreement between the Housing Court Judges and the first Defendant, the Plaintiffs deemed it very wise to remove the case. [**28 USC Section 1446**] [Exhibit 2]

## COUNT TWO

The Court's jurisdiction over the case should not be disputed. The case had *federal question* bearings. [28 Section 1331] There existed statutory and constitutional provisions too. [42 USC Sections **3631**, 1981, 1983, 1985(3), 1986 and 1994; Article III]

The *necessary parties* were residents of Massachusetts. The case lent itself to Massachusetts' Civil Rights. [M.G.L.cs. 151B, Section 1-10, 12 Sections 11H-11J] The importance of Massachusetts' Constitution Articles Five and Eleven would not be over-emphasized. The same applied to supplemental jurisdiction. However, there existed adequate federal law that there would be no need to recourse to that. The Court could hear the case without the three common conditions – statutory, federal question and diversity of citizenship. The third one was unnecessary. [**Klein v. Drexel Burnham Lambert**, 737 F.Supp. 319, 323 n. 11 (E.D. Pa. 1990 (in the case, the district court did not have any of the three types of subject matter jurisdiction the 11th Circuit spelt-out in the case of **Baltin v. Alaron Trading Corp**. (11th Cir. No. 96-5123 appealed from the United States' District Court for the Southern District of Florida (No. 96-8195-CV-KLR), Kenneth L. Ryskamp, Judge]

### COUNT THREE

Taking everything into consideration, the Plaintiffs were condemned to discrimination at the Massachusetts' Boston Housing Court. The Plaintiffs had done everything humanly possible to comply with the conditions of the Housing Court's Mediation Agreement, but the first Defendant insisted on eviction of the Defendants. On July 15th, 2004 the first Defendant and the Plaintiffs reached payments' plan. The first payment was July 31st, 2004. The said date was a Saturday. Then, first August was a Sunday, of course. Owing to **duress of circumstances**, the Plaintiffs were incapacitated from making the payment on August 2nd and 3rd. On the 4th, the Plaintiffs dropped off a post-dated check for the first Defendant – August 20th – 2004 – for a sum of $2,500.00. The Plaintiffs were entitled for a three-day mailing period central to the Massachusetts' Rule of Civil Procedure 6. So, the deadline for the payment was 4th August, which was the day the Plaintiffs made the payment.

### COUNT FOUR

On August 3rd, the first Defendant went to the Boston's Housing Court and filed "Plaintiff's Motion for Execution." There was a hearing and dubious Judge Pierce granted it. The Plaintiff's filed a 'Motion To Reconsider/New Hearing.' Before the hearing, on August 13th, 2004 the Plaintiffs tendered an official check for $3,037.00 to the first Defendant presently and it deemed it commercially intelligent to return the check

to the Plaintiffs before Judge Pierce. The Plaintiffs accepted the check. However, the first Defendant had not returned the personal checks, which was originally issued to it and cancelled by written information as well as another check. In essence, the first Defendant had the Plaintiffs' two checks for $2,500.00 and $537. The numbers added up would give the amount of the official check for $3,037.00, which the first Defendant rejected. The law forbade that! [M.G.L.c. 106 Section 3-604 – "Discharge by Cancellation or Renunciation; Uniform Commercial Code (UCC) Article 3, Part 6 Section 3-604 – "Discharge by Cancellation or Renunciation"]

## COUNT FIVE

The first Defendant did forfeit the money it decided voluntarily to reject. The Plaintiffs should be exonerated from the said amount the first Defendant rejected as a matter of law. On the Court fee for $176.77 the first Defendant demanded the said amountsfrom the Plaintiffs on July 15th, 2004, but the Plaintiffs disagreed being responsible for any court fee. In the alternative, the Plaintiffs would make higher initial payment. Before the resolution on the $2,500.00 initial payment, the necessary parties agreed on something less. Speaking under subject to correction, it was [about] $2,000.00. To avoid being responsible for the court's fee, the first Defendant and the Plaintiffs agreed that higher amount should be paid in place of being responsible for the court's fee. The first Defendant accepted that and presently, she demanded the court's fee. The Plaintiffs would not be responsible for it under **representation estoppel. [Devito v. Chicago Park District, et al**. (7th Cir. No. 00-1759) (appealed from the United States' District Court for the Northern District of Illinois, Eastern Division No. 94- C 4042- Wayne R. Anderson, Judge; **Home Beneficial Corp. & Continental Insurance Co. v. Jackson** (Virginia Workers' Compensation Commission) (No. 1155-99-1]

## COUNT SIX

In that case, the second Defendant was sued on his individual and official capacities. Furthermore, on August 26th, the Plaintiffs submitted 'Defendant's Motion For Judge Pierce Recusal/Withdrawal From The Case." Hearing was scheduled on September 09th, in Courtroom 9. When it was time, Judge Pierce - the second Defendant - was not in the Courtroom 9 as specified. Then, the third Defendant decided to transfer the case to him at Courtroom 7. The Plaintiffs objected to Judge Pierce presiding over

the motion about his partiality. Under normal circumstances or borrowing leaf from the 28 USC Section 455, he had to withdraw from the case. **Liteky v. United States** 114 S.Ct. 1147 provided adequate insight on how to proceeding when there was a motion for a judge's disqualification. Judge Pierce trivialized that with equanimity. In brief, he INSISTED presiding over the case contrary to the Plaintiffs objection. Eventually, he denied the motion for his withdrawal in sharp contrast with precedents.

### COUNT SEVEN

Since he insisted, he violated the law; therefore, the Eviction Order he issued was *void* and not even *voidable*. He had no jurisdiction over the case upon the Plaintiffs' Motion for Disqualification. His action amounted to "**an act done in complete absence of all jurisdictions cannot be a judicial act.**" [**Piper v. Pearson**, 2 Gray 120, cited in Bradley v. Fisher, 13 Wall. 335, 20 L. Ed. 646 (1872); **Gregory v. Thompson**, 500, F2d 49 (C.A. Ariz. 1974. Truly, he really abused his discretion and the prevalence of such had been actionable. [**State use of Little v. United States' Fidelity & Guaranty Co**, 217 Miss. 576 64 So.2d 697] An excerpt from the Supreme Court's **Liteky** case read:

"It has been held that a judge's self-appraisal that he or she is able to preside impartially over the case is irrelevant. **Clay v. Doherty**, 608 F.Supp. 295 (N.D. Ill. 1985). The **Sciuto** court, among others, has stated that the right to a tribunal free from bias, prejudice, or the appearance of partiality is based on the Due Process Clause, and not on any statute. **United States v. Sciuto**, 521 F.2d F.2d 842 (7th Cir. 1996). Recusal is not intended to protect litigants from actual bias in their judge but rather to promote public confidence in the impartiality of the judicial process. **Liljeberg v. Health Services Acquisition Corp.**, 486 U.S. 847, 108 S.Ct. 2194 (1988); **United States v. Balistrieri**, 779 F.2d 1191 (7th Cir. 1985); it is directed against the appearance of partiality. **United States v. Murphy**, 768 F.2d 1518 (7th Cir. 1985)."

### COUNT EIGHT

On September 09th, 2004 the Plaintiffs submitted 'Defendants' Complaint Against Judge Pierce' to Chief Judge Kyriakakis. There was no schedule for the hearing. Then, on September 13th, 2004 the Plaintiffs were served with the Eviction Order Notice. The Plaintiffs went to the Boston's Housing Court and filed a "Motion for Restraining Order." Judge Nasif – the third Defendant heard the case. The Plaintiffs argued that Judge Pierce's Eviction Order was null and void, but Judge Nasif did not agree with the Defendants and currently Plaintiffs. To him, Judge Pierce had to preside over his own cause contrary to the precedents the United States' Supreme Court established. He really

aimed at rationalization of nonsense legally speaking. Consequently he affirmed the Eviction Order. Under normal circumstances, when a Complaint was filed with a Chief Judge of a Court, s/he would review it and determine if there legitimacy to the Complaint and re-assigned the case to another Judge. On the part of the Plaintiffs' Complaint against Judge Pierce and according to Judge Nasif nothing should be done by the Chief Judge of the Boston's Housing Court. That was preposterous and unintelligent! That reflected upon "**Failure to Train as a Theory of Section 1983.**" **Monell v. New York City Department of Social Service**, 436 U.S. 658, 98 S.Ct. 2019 (1978)] That lent itself to INTENTIONAL TORT. Excerpts in that respect read:

"The Court in **Yates v. Village of Hoffman Estates, Illinois**, 209 F.Supp. 757 (N.D. ILL. 1962) held that "not every action by a judge is in exercise of his judicial function ... it is not a judicial function for a judge to commit an intentional tort even though the tort occurs in the courthouse."

### COUNT NINE

Importantly, the third Defendant was sued on his individual and official capacities just like the second Defendant. The third Defendant's action matched with **negligence** and violation of the *Impacts Rule*. Striking amongst them was the "intentional infliction of emotional distress (without proof of physical harm). He violated his oath of office just like the second Defendant. His failure to enforce the law qualified for "treason" and "trespassers of the law." Therefore, he, just like the second Defendant could not capitalize from judicial immunity these and those. [**United States v. Will**, 449 U.S. 200, 216, 101 S.Ct. 471, 66 L.Ed.2d 392, 406 (1980); **Cohen v. Virginia**, 19 U.S. (6 Wheat) 264, 404, 5 L.Ed. 257 (1821); **Cooper v. Aaron**, 358 U.S. 1, 78 S.Ct. 1401 (1958)] By and large, the second and the third Defendants knowingly deprived the Plaintiffs Equal Protection and Due Process Clauses. Excerpts in that respect read, thus:

"If a judge does not fully comply with the Constitution, then his orders are void, In re Sawyer, 128 U.S. 200 (1888), he/she is without jurisdiction, and he/she had engaged in an act or acts of treason."

"The U.S. Supreme Court, in **Scheuer v. Rhodes**, 416 U.S. 232, 94 S.Ct. 1683, 1687 (1974) stated that "when a state officer acts under a state law in a manner violative of the Federal Constitution, he "comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subject <u>in his person</u> to the consequences of his individual conduct. The State has no

power to impart to him any immunity from responsibility to the supreme authority of the United States." [Emphasis supplied in original].

The Plaintiffs would seek compensatory and punitive damages from the first Defendant in the amount of $80m for malicious prosecution and exonerated the Plaintiffs from the payments plan of $184.25, which should end on July 5th, 2005. For the second and third Defendants, the Plaintiffs would demand $3m in keeping with the Massachusetts' General Law Section 258 Sections 1-10. Of course, two instances would not be the same. Cost/s and interest would be excluded [respectively]

More, the Plaintiffs would demand a **permanent injunction** against the first Defendant not to **evict** the Plaintiffs as far as they (Plaintiffs) paid their rent. The Plaintiffs had already **renew** their lease with the first Defendant for a year – ending in August – 2005. It would be intelligent to order the first Defendant not to deprive the Plaintiffs what they duly deserved as far as they maintained their residence on its property and if it did, it would be held accountable to the full wrath of the law. Finally, **prohibition** or **writ of mandamus** should be expeditiously issued to STAY THE EXECUTION OF THE EVICTION ORDER due on Thursday – September 16th – 2004.

PRECIOUS OKEREKE, ET AL.,
106F Minden Street # Three
Jamaica Plain – MA 02130.
Telephone Number: (617) 524 8735.

**Dated in Boston on Tuesday – September 14th – 2004.**

ROSCOE, BEDUGNIS & ASSOCIATES
CONSTABLES CITY OF BOSTON
15 COURT SQUARE, SUITE 450
BOSTON, MA. 02108
(617) 523-1036

# EVICTION NOTICE

TO: CHUCKWU AND PRECIOUS AZUBUKO           DOCKET # 04-SP-02260
~~106 MINDEN STREET, #3~~
JAMAICA PLAIN, MASSACHUSETTS   02130

BY ORDER OF THE   BOSTON HOUSING   COURT, I WILL BE HERE ON THE   SIXTEENTH DAY OF SEPTEMBER, 2004, THURS.,   AT 9:00 A.M. OR SOME HOUR THEREAFTER TO REMOVE ALL GOODS AND CHATTLES FROM THE WITHIN DESCRIBED PREMISES, AND PLACE THEM IN A PUBLIC STORAGE WAREHOUSE FOR SAFEKEEPING.

IF YOU HAVE ANY QUESTIONS, PLEASE CALL OUR OFFICE
(617) 523-1036

_____
BARBARA L. BEDUGNIS, DAVID G. BEDUGNIS, SR.
ROSCOE, BEDUGNIS & ASSOCIATES
CONSTABLES OF BOSTON
15 COURT SQUARE, SUITE 450
BOSTON, MA. 02108

**¡IMPORTANTE! ESTA NOTICIA AFECTA SUS DERECHOS Y OBLIGACIONES Y DEBE SER TRADUCIDO**

EXHIBIT 01



# US CODE COLLECTION





**TITLE 28 > PART IV > CHAPTER 89 > Sec. 1446.**

Prev | Next

## Sec. 1446. - Procedure for removal

**(a)**

A defendant or defendants desiring to remove any civil action or criminal prosecution from a State court shall file in the district court of the United States for the district and division within which such action is pending a notice of removal signed pursuant to Rule 11 of the Federal Rules of Civil Procedure and containing a short and plain statement of the grounds for removal, together with a copy of all process, pleadings, and orders served upon such defendant or defendants in such action.

**(b)**

The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable, except that a case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action.

**(c)**

**(1)**

A notice of removal of a criminal prosecution shall be filed not later than thirty days after the arraignment in the State court, or at any time before trial, whichever is earlier, except that for good cause shown the United States district court may enter an order granting the defendant or defendants leave to file the notice at a later time.

**(2)**

A notice of removal of a criminal prosecution shall include all grounds for such removal. A failure to state grounds which exist at the time of the filing of the notice shall constitute a waiver of such grounds, and a second notice may be filed only on grounds not existing at the

Search this title:

Notes
Updates
Parallel authorities (CFR)
Topical references

**EXHIBIT 02**

time of the original notice. For good cause shown, the United States district court may grant relief from the limitations of this paragraph.

**(3)**

The filing of a notice of removal of a criminal prosecution shall not prevent the State court in which such prosecution is pending from proceeding further, except that a judgment of conviction shall not be entered unless the prosecution is first remanded.

**(4)**

The United States district court in which such notice is filed shall examine the notice promptly. If it clearly appears on the face of the notice and any exhibits annexed thereto that removal should not be permitted, the court shall make an order for summary remand.

**(5)**

If the United States district court does not order the summary remand of such prosecution, it shall order an evidentiary hearing to be held promptly and after such hearing shall make such disposition of the prosecution as justice shall require. If the United States district court determines that removal shall be permitted, it shall so notify the State court in which prosecution is pending, which shall proceed no further.

**(d)**

Promptly after the filing of such notice of removal of a civil action the defendant or defendants shall give written notice thereof to all adverse parties and shall file a copy of the notice with the clerk of such State court, which shall effect the removal and the State court shall proceed no further unless and until the case is remanded.

**(e)**

If the defendant or defendants are in actual custody on process issued by the State court, the district court shall issue its writ of habeas corpus, and the marshal shall thereupon take such defendant or defendants into his custody and deliver a copy of the writ to the clerk of such State court.

**(f)**

With respect to any counterclaim removed to a district court pursuant to section 337(c) of the Tariff Act of 1930, the district court shall resolve such counterclaim in the same manner as an original complaint under the Federal Rules of Civil Procedure, except that the payment of a filing fee shall not be required in such cases and the counterclaim shall relate back to the date of the original complaint in the proceeding before the International Trade Commission under section 337 of that Act

Prev | Next



EXHIBIT 02